# Richmond.

## LANGHORNE v. McGHEE.

### December 1, 1904.

1. COMPROMISE—*Affecting Rights of Third Person—Case at Bar.*—A cred-
itor of a partenrship agreed to sever the partnership liability and
to allow each partner to pay a certain part of the debt, and that
the two partners should have a settlement of their partnership
transactions, and that the social assets, which were conveyed to
secure the creditor, should be applied to the individual liabilities
of each partner under their severed liability in proportion to their
respective interests in the partnership assets. Being unable to
agree upon terms of settlement, one of the partners sued the
other for a settlement. On orders of reference several reports were
made, each finding a large balance in favor of the plaintiff part-
ner. None of these reports were confirmed. Finally they compro-
mised upon an amount due the plaintiff, less than that found by
either of the reports in the cause. The creditor was no party to
this suit or compromise. At his instance the decree approving
the compromise and decreeing against the defendant was set aside.
No effort was made by the creditor to show that the compromise
was not just and fair, although more than a year elapsed before
this action was tried, and it is not claimed that there was any
fraud or collusion between the partners, or that the sum agreed
upon is in excess of what was due.

   *Held:* Under the facts and circumstances the creditor is bound
by the compromise between the partners.

2. SET-OFFS—*Payments—List—Proof.*—Where the items of an account
filed with a plea of payment, or with a plea under which payment
may be proved, as *nil debet*, are so described as to give the plain-
tiff notice of their character, the defendant may show either pay-
ments or set-offs. If the nature of the item be distinctly stated,
the statute is complied with, though the item be wrongly de-
nominated.

3. ASSUMPSIT—*Over-Payments—Social Assets—Action by One Partner.*—
   Where, by a lawful agreement between two partners, all of certain
   partnership funds are the property of one of the partners, and a
   creditor of that partner receives them in excess of a debt he holds
   against him, to the extent of the over-payment the creditor has in
   his hands that to which the partner is entitled, which the latter
   can recover in an action of assumpsit in his own name, for when-
   ever one person has in his hands money equitably belonging to
   another, that other person may recover it by assumpsit for money
   had and received.

Error to a judgment of the Circuit Court of Bedford county,
rendered in an action of debt, wherein the defendant in error
was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Horsley & Kemp* and *Caskie & Coleman*, for the plaintiff in
error.

*J. Lawrence Campbell*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

John D. Langhorne, in April, 1902, instituted his action of
debt against Wm. H. McGhee and J. W. Ballard on two nego-
tiable notes, aggregating $3,054.16, including costs of protest.
The defendants pleaded *nil debet*, and with their plea filed an
account of offsets which amounted, including interest, to $4,-
125.39.

Upon the trial of the cause, neither party requiring a jury,
the whole matter of law and fact being submitted to the court,
a judgment was rendered against the plaintiff for the difference
between the amount of the offsets and the notes sued on.   To
that judgment this writ of error was awarded.

The errors assigned are that the court erred in admitting the evidence offered by the defendants, and in rendering judgment against the plaintiff.

The evidence offered by the defendants showed that T. D. Berry and Wm. H. McGhee were, prior to January, 1896, engaged in business as partners under the firm name of Berry & McGhee; that they were indebted to the plaintiff in the sum of $7,300, evidenced by two negotiable notes, one for $4,800 and the other for $2,500; that on the 7th day of May, 1896, they conveyed the assets of the concern to William Eubank, trustee, to secure the payment of the said indebtedness; that on the same day an agreement was entered into by Berry & McGhee, and the plaintiff, in which it is recited that the defendants had executed the said deed of trust, and the purposes for which it was executed; that the property conveyed by it was the joint property of the defendants, but the accounts between them had not been settled so as to show the relative rights of each therein, and that it was probable that they were not equally interested in the property; that McGhee, one of the defendants, had executed and delivered to the plaintiff two negotiable notes, one for the sum of $3,650 and the other for $350, each endorsed by James W. Ballard, of even date with the agreement, payable four months after date; that the $3,650 note had been given as collateral and additional security for McGhee's one-half of the debt secured by the deed of trust; . that the $350 note had been given as a guarantee of that much of Berry's half of the $7,300 debt; that the plaintiff had agreed that these notes ($3,650 and $350) might, at the option of the plaintiff, be renewed from time to time so as to cover a period of twelve months, upon paying the discount at six *per cent. per annum.* After making the foregoing recitals it is declared that "this agreement witnesseth that it hath been agreed between the parties hereto that a settlement shall be

had between the said Thomas D. Berry and William H. McGhee of the transactions growing out of their partnership dealings, and that the proceeds of the sale and collections to be made by the said Wm. Eubank, trustee under the deed of trust aforesaid, shall be apportioned between the said Thomas D. Berry and William H. McGhee in proportion to their respective interests in said assets, as the same shall be developed upon the settlement of said partnership accounts, and that whatever would be the said McGhee's proportion of said assets shall be credited on the said note for $3,650, and that he shall be required to pay only the residue of said note for $3,650 after crediting thereon his due proportion of the amount derived under the deed first aforesaid; . . . and that upon the execution and delivery of the two notes aforesaid of $3,650 and $350, respectively, the said William H. McGhee shall be discharged from all personal liability upon the said notes of $2,500 and $4,800 first aforesaid, but such discharge shall not in any way affect the validity of the deed of trust aforesaid."

The $3,650 note was renewed from time to time until May 17, 1897, when, in consequence of a demand made by the plaintiff, McGhee paid $950 thereon, thus reducing the note to $2,700, which with the $350 note continued to be renewed from time to time until February 24, 1902.

In September, 1896, a few months after the agreement of May 7 was entered into, McGhee instituted a suit against Berry for a settlement of the partnership matters of Berry & McGhee; an order was entered directing one of the commissioners of the court to take and state their partnership account; the commissioner reported in May, 1899, that Berry was indebted to McGhee in the sum of $4,334.13, as of April 15, 1896, upon a settlement of their partnership matters; and this report, upon exception by both parties, was recommitted, and in October, 1899, a second report was made which showed that

Berry's indebtedness to McGhee on that account was $3,192.84, with some interest. Upon exceptions by Berry, that report was recommitted, but no new account was taken. In February, 1902, a compromise was made between Berry and McGhee, in which it was agreed that the former was indebted to the latter in the sum of $3,000, as of September, 1896, and a decree confirming such compromise and giving judgment against Berry for that sum was entered by the court on May 20, 1902, in the suit for the settlement of their partnership affairs. That order was set aside at the instance of Langhorne, through his counsel, on the ground that he was interested in the matter, and desired to assert his rights in relation thereto. Nothing further was done in that case.

By the compromise agreement between Berry and McGhee, it appeared that the former had received out of the partnership business $3,000 more than he was entitled to, thus showing that McGhee, as between himself and Berry, was entitled to the whole of the proceeds of the property conveyed to Eubank, trustee (that being less than the $3,650 note), and that Berry would still be indebted to McGhee in a large sum. It thus appears, if the compromise agreement was binding upon the plaintiff, that McGhee had the right, under the agreement of May 7, to have so much of the proceeds of the property received by the plaintiff from Eubank, trustee, applied to the satisfaction of the $2,700 note sued on as might be necessary for that purpose, and to have a judgment against the plaintiff for the residue thereof after setting off or deducting therefrom an amount equal to the $350 note, and its interest.

The trial court did this, and there is no error in its action, unless, as the plaintiff insists, the compromise in question is not binding upon him, or the pleadings in the case did not authorize such judgment.

It is true the plaintiff was no party to the compromise, nor

to the suit for a settlement of the partnership affairs of Berry and McGhee, in which the compromise was made. The agreement of May 7 did not provide that he should be a party to the settlement between Berry and McGhee, whether made with or without litigation. He knew that the compromise, settling their partnership accounts, had been made. At his instance the order of the court, confirming their agreement of compromise, was set aside, in order that he might look into it and assert his rights in relation thereto. Although more than a year elapsed after that order was set aside at his instance before this case was tried, nothing was done in that case. He made no effort to show that the sum of $3,000 agreed upon by the compromise was not justly due from Berry to McGhee on their partnership accounts, and there is no suggestion here now that in making the compromise Berry and McGhee were guilty of any fraud or collusion, or that the sum agreed upon was in excess of what Berry owed McGhee on that account. Under all the facts and circumstances of the case, we are of opinion that the compromise is binding upon the plaintiff.

It is insisted that under the pleadings in the cause, even if the compromise be binding upon the plaintiff, the defendants could not have any part of the moneys received by the plaintiff from Eubank, trustee, treated as payments on the $3,650, or any renewal thereof, because there was no account of payments filed with the plea of *nil debet.*

It is true that the account filed by the defendant, showing what sums had been received by the plaintiff from the proceeds of the property conveyed to Eubank, trustee, was described as an account of set-offs. Our statute—Code, sec. 3298—treats payment and set-off together, and places them upon the same ground in prescribing the mode of relying on them as matters of defense. *Allen* v. *Hart*, 18 Gratt., at p. 734.

Where the items of an account filed with a plea of payment,

or with a plea under which payment may be proved, as *nil debet*, are so described as to give the plaintiff notice of their character, the defendants ought not to be deprived of the right to show that such items, or any of them, are payments, because they are described generally in the account filed as an account of offsets.

In the case of *Trimyer* v. *Pollard*, 5 Gratt. 460, all the items in the account filed were described as offsets, yet the court held that an item in the account so described, which appeared to be a payment and not a set-off, should be treated as a payment. In so holding, Judge Allen (pp. 475-6) said: "The items are distinctly stated, and if from that statement it appears that any one of the items consisted of a payment and not an offset, the general description of the account as an account of off-sets ought not to affect the rights of the parties. The notice of the items is to be obtained from the face of the account, and if the nature of it is there distinctly stated, the statute is complied with."

While the account filed in this case is described as a statement of off-sets, the items are described as so much cash paid the plaintiff by Eubank, trustee, &c., at various times, and distinctly informed the plaintiff of the character of the defendants' claim, and entitled the defendants to prove such items to be payments.

A further objection is made that the defendants could not have allowed as off-sets any part of the money received by the plaintiff from Eubank, trustee, because McGhee could not have maintained an independent action therefor against the plaintiff.

By the terms of the agreement of May 7, the moneys received by the plaintiff from Eubank, trustee, to the extent of McGhee's interest therein, not exceeding the amount of the $3,650 note, were to be credited thereon. McGhee, from sources other than his interest in the proceeds of the property conveyed

to Eubank, trustee, paid the interest on that note and renewals thereof, and reduced the note from $3,650 to $2,700. These payments, together with the sums which the plaintiff received from Eubank, trustee, more than satisfied the $3,650 note, and to the extent of such over-payment the plaintiff had moneys in his hands to which McGhee was entitled, and which could have been recovered by McGhee from Langhorne by an action of *assumpsit*, for wherever one person has in his hands money equitably belonging to another, that other person may recover it by *assumpsit* for money had and received. *Gaines* v. *Miller.* 111 U. S. 395, 4 Sup. Ct. 426, 28 L. Ed. 466; *B. & O. R. R. Co.* v. *Burke & Herbert*, 102 Va. 643, 47 S. E. 824, and cases cited.

Without discussing further the objections urged by the plaintiff in error to the action of the Circuit Court, it is sufficient to say that we are of opinion that there is no error in its judgment, and that it must be affirmed.

*Affirmed.*