### C. HELEN DOWNER & others *vs.* FRANK O. SQUIRE & others, executors.

Suffolk.    January 11, 1904. — June 23, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Limitations, Statute of. Bond. Trust,* Termination.

A trustee gave a bond to the beneficiaries interested in a certain sum of money received in trust by him, with the condition, that in the event of his ceasing to hold the sum as trustee by reason of death or otherwise his executors or administrators should pay the sum with all income therefrom then due to such person as the beneficiaries or the Probate Court should designate " to receive said sum ", and in the meantime the trustee should pay to the beneficiary for life, a net income of at least five per cent per annum on the fund. On the same day the trustee and the beneficiaries executed an agreement in writing that the trustee

instead of investing the fund should lend it to a firm consisting of himself and the sureties on his bond. The trustee died and executors under his will were appointed, filed bonds and gave notice of their appointment. Seven years thereafter a new trustee was appointed to hold the fund, and in three months made a demand for the fund on the executors of the first trustee. Within a year from the appointment of the new trustee the beneficiaries of the trust brought an action against the executors of the first trustee on the bond of their testator. Before this action was brought the new trustee had petitioned the Probate Court for an order to the executors of the first trustee to retain sufficient property in their hands to satisfy the claim, and that court made the order, the accounts of the executors not having been settled. *Held,* that the action of the beneficiaries against the executors was not barred by the special statute of limitations because there was no default on the bond until demand was made for the money after the appointment of the new trustee; *also,* that the petition for the retention of assets was presented seasonably, and being for the same claim it did not matter that it was presented by the new trustee instead of by the plaintiffs; *also,* that the agreement permitting the first trustee to use the trust fund in his business did not terminate his liability as trustee, except so far as it was changed by the agreement; *also,* that the action was not barred by the general statute of limitations, for, although no demand was made until more than six years after it could have been made, the action was brought within twenty years from the execution of the bond; *also,* that it was no bar to the action that the accounts of the first trustee were not fully settled when it was brought, as the bond was not a general one to secure the faithful discharge of the trust, but was given to secure the payment of a specified sum of money.

An executor who also is trustee under the same will is liable as executor for assets in his hands until his account as executor has been filed and allowed in the Probate Court.

CONTRACT against the executors under the will of John P. Squire, late of Arlington, for alleged breach of the condition of a bond dated July 1, 1884, given by John P. Squire as principal and Frank O. Squire and Fred F. Squire as sureties. Writ dated December 20, 1900.

The case came on to be heard before *Hammond*, J. upon an amended declaration, an amended answer and certain documentary and oral evidence. The justice reserved the case for determination by the full court on the amended declaration, the amended answer and the evidence which was introduced so far as material.

The bond sued upon was as follows:

"Know all men by these presents: That we, John P. Squire, as principal, and Frank O. Squire and Fred F. Squire, as sureties, all of Arlington, in the County of Middlesex and Commonwealth of Massachusetts, are held and stand firmly bound unto C. Helen Downer, Roswell C. Downer, Frank W. Downer and

Samuel T. Downer, all of Somerville, in said County of Middlesex, in the sum of fifty thousand dollars, to be paid to said C. Helen Downer, Roswell C. Downer, Frank W. Downer and Samuel T. Downer, or their respective executors, administrators or assigns, for which payment well and truly to be made we do jointly and severally bind ourselves, our heirs, executors and administrators firmly by these presents.

" Sealed with our seals.

" Dated the first day of July, A. D. 1884.

" The condition of this obligation is such :

" That, Whereas on the fourteenth day of December, A. D. 1881, an agreement was made by and between the late Cutler Downer, deceased, of Somerville aforesaid, and C. Helen Adams, now C. Helen Downer, widow of said Cutler Downer, that in the event of their marriage with each other she should 'receive from the executor or administrator of the said Downer on his decease and the settlement of his estate . . . the net income from the sum of forty thousand dollars during her life and payable semi-annually; the said forty thousand dollars to be held and invested by some person to be designated by will of said Downer, or, if he shall die intestate, by the Judge of the Probate Court for the County in which the said Downer shall last dwell '; and

" Whereas said Cutler Downer having died intestate on the thirtieth day of May, A. D. 1884, George M. Brooks, Judge of the Probate Court for the County of Middlesex, in which said Downer last dwelt, has duly designated as said trustee John P. Squire aforesaid ; and

" Whereas said John P. Squire has accepted said trust and hereby acknowledges that on the first day of July, A. D. 1884, he received the sum of forty thousand dollars from Roswell C. Downer and Frank W. Downer, the administrators of the estate of said Cutler Downer, to be held, invested and finally distributed as set forth in said agreement:

" Now, therefore, if said John P. Squire shall well and truly pay to said C. Helen Downer during her life a net income from said forty thousand dollars of five per cent of said sum or more, said income to be paid semi-annually or oftener, if said John P. Squire and C. Helen Downer so agree ;

" And if he shall pay to the legal representatives of said C. Helen Downer any and all income which shall accrue between the date of her decease and the date of the last payment of income as aforesaid which shall have been made to her prior to her decease;

" And if within thirty days after the decease of said C. Helen Downer he shall make an equal distribution of said forty thousand dollars, together with any and all income therefrom which shall accrue between the date of the decease of said C. Helen Downer and the date of making said distribution among Roswell C. Downer, Frank W. Downer and Samuel T. Downer or their respective legal representatives, and if in the event of his ceasing to hold said sum of forty thousand dollars as trustee, by reason of death or otherwise, said John P. Squire or his heirs, executors or administrators shall pay said sum, together with any and all income therefrom which may and shall then be due, to such person as may and shall be designated by said C. Helen Downer, Roswell C. Downer, Frank W. Downer and Samuel T. Downer, or their legal representatives; or in case of no agreement between said persons, to the one who may and shall be designated by the Judge of the Probate Court in and for the County of Middlesex aforesaid; or to some person who may and shall be otherwise legally designated to receive said sum,

" Then this obligation shall be void; otherwise it shall remain in full and effect.

|  |  |
|---|---|
| | " John P. Squire.    [Seal] |
| " Witness, | Frank O. Squire.    [Seal] |
| " John Herbert, | Fred F. Squire.    [Seal] |
| to all." | |

" Boston, July 1st, 1884.

" Received of Roswell C. Downer and Frank W. Downer, in their capacity as administrators of the estate of Cutler Downer, forty thousand dollars, to be held and invested by me for the use and benefit of C. Helen Downer. Another acknowledgment of said sum has also been made in a bond of even date herewith.

" Witness —                                      John P. Squire.
        " John Herbert."

An agreement between the parties to the bond and of the same date was as follows:

"Know all men by these presents: That whereas it is provided by the terms of an ante-nuptial contract, made on the fourteenth day of December, A. D. 1881, by and between the late Cutler Downer, deceased, of Somerville, in the County of Middlesex and Commonwealth of Massachusetts, and C. Helen Adams, now C. Helen Downer, widow of said Cutler Downer, that on the decease of said Cutler Downer and the settlement of his estate, his administrators should pay the sum of forty thousand dollars to some person to be designated as trustee in the manner therein set forth, and that said trustee should hold and invest said sum for the use and benefit of said C. Helen Downer, and should pay to her semi-annually during her life the net income from said sum of forty thousand dollars; and

"Whereas, John P. Squire, of Arlington, in the County of Middlesex aforesaid, has been duly designated as said trustee,

"Now, therefore, in consideration of the acceptance of said trust, it is hereby understood and agreed by and between said John P. Squire and C. Helen Downer, Roswell C. Downer, Frank W. Downer and Samuel T. Downer (being all of the persons having any right, title or interest in or to said sum or the income thereof), that instead of investing said sum of forty thousand dollars, said Squire shall be allowed and is hereby granted permission to loan said sum to the firm of John P. Squire & Co., composed of said John P. Squire, Frank O. Squire and Fred F. Squire, all of Arlington aforesaid, and having their usual place of business in Boston, in the County of Suffolk and Commonwealth aforesaid; but said agreement and permission shall not be construed as releasing in any respect said John P. Squire or any one of his sureties from any of the obligations contained in a bond of even date herewith, given by said John P. Squire, as principal, and said Frank O. Squire and Fred F. Squire, as sureties, to said C. Helen Downer, Roswell C. Downer, Frank W. Downer and Samuel T. Downer.

"It is further understood and agreed that any income from said sum of forty thousand dollars which shall accrue between the date of the decease of said C. Helen Downer and the last payment to her of any of the income from said sum, shall be paid to her legal representatives.

"In witness whereof we set our hands and seals to this and

to another instrument of like tenor and date, on this first day
of July, A. D. 1884.

" John P. Squire.        [Seal]

C. Helen Downer.     [Seal]

Roswell C. Downer. [Seal]

" Witness —                        Frank W. Downer.    [Seal]

    " John Herbert,            Samuel T. Downer.   [Seal]

       to all."

The proceedings in the Probate Court upon the petition of
John Herbert, successor of John P. Squire as trustee, mentioned
in the opinion, were as follows :

" To the Honorable the Judges of the Probate Court in and
for the County of Middlesex:

" Respectfully represents John Herbert, of Somerville, in the
County of Middlesex and Commonwealth of Massachusetts, as
he is trustee in place of John P. Squire, under a certain instru-
ment in writing, dated December 14, 1881, filed in the Probate
Office for Middlesex County, wherein Cutler Downer, late of
said Somerville, deceased, gave certain estate in trust for the
benefit of C. Helen Downer, called in said instrument C. Helen
Adams ; that at a Probate Court, holden at Cambridge, in and
for said County, on the seventh day of February, 1893, Frank
O. Squire, Fred F. Squire and John P. Wyman were duly ap-
pointed Executors of the last will of said John P. Squire, late
of Arlington, in said County, deceased, and the bond given by
each of them for the faithful discharge of said trust was approved
by the Judge of said Court ; that said Executors have given due
notice of their said appointment; that your petitioner has a just
claim against the Estate of John P. Squire, a full statement of
which is hereto annexed and marked ' A,' but that the right of
action on said claim did not accrue within two years after the
giving of said bonds by said Executors, and said estate is not
fully administered.

" Wherefore your petitioner prays that said Executors may
be ordered to retain of said Estate sufficient property to satisfy
said claim, and that such other orders may be made in the prem-
ises as justice may require.

" Dated this twenty-fifth day of October, A. D. 1900.

" John Herbert, Trustee."

"A.

"Statement of Claim.

"On the fourteenth day of December, A. D. 1881, an antenuptial contract was made by and between Cutler Downer and C. Helen Adams, now C. Helen Downer, by which it was provided that in case of the decease of said Cutler Downer, the sum of forty thousand dollars ($40,000) should be held and invested by some person to be designated by said Cutler Downer in his last will, or, if he should die intestate, by some person to be designated by the Judge of the Probate Court for the County in which said Cutler Downer should last dwell, and that the net income thereof should be paid to said C. Helen Downer during the rest of her life.

"Said Cutler Downer died intestate in Somerville, in the County of Middlesex, on the thirtieth day of May, 1884, and Roswell C. Downer and Frank W. Downer were duly appointed administrators of his estate.

"On or about the first day of July, 1884, John P. Squire, of Arlington, in said County of Middlesex, was informally designated by the Judge of the Probate Court for said County as the person who should hold and invest said sum as Trustee for said C. Helen Downer, and on said date said sum of forty thousand dollars ($40,000) was paid to said John P. Squire by said administrators for the purpose aforesaid.

"A bond for the faithful discharge of his duties as said Trustee was given by said John P. Squire as principal, and Frank O. Squire and Fred F. Squire as sureties, and by said bond it was provided that in case said John P. Squire should cease to hold said sum of forty thousand dollars ($40,000) as Trustee by reason of his death, or otherwise, his heirs, executors or administrators should pay said sum, together with all income therefrom which should then be due, to the one who should be designated by the Judge of the Probate Court in and for said County of Middlesex as Trustee in place of said John P. Squire.

"On the seventh day of January, 1893, said John P. Squire died in said Arlington, and no one was appointed as Trustee in his place until the tenth day of January, 1900, on which date John Herbert, the petitioner, was duly appointed as such Trustee at a Probate Court holden at Cambridge, in and for said County of Middlesex.

"All income from said forty thousand dollars ($40,000) to December 1, 1899, has been paid monthly to said C. Helen Downer by the legal representatives of said John P. Squire, but since said date no income therefrom has been paid to her.

"On the twenty-sixth day of April, 1900, the petitioner duly demanded of the Executors of the will of said John P. Squire said sum of forty thousand dollars ($40,000) and accrued interest thereon, but neither the whole nor any part thereof has been paid, and the estate of said John P. Squire owes the petitioner the sum of forty thousand dollars ($40,000) and interest thereon from the first day of December, 1899."

"At a Probate Court holden at Lowell, in and for said County of Middlesex, on the eighteenth day of December, in the year of our Lord one thousand nine hundred, by continuance from the twenty-seventh day of November, 1900.

"On the petition of John Herbert, as he is Trustee in place of' John P. Squire, under a certain instrument in writing, dated December 14, 1881, filed in the Probate Office for Middlesex County, wherein Cutler Downer, late of Somerville, in said County, gave certain estate in trust for the benefit of C. Helen Downer, called in said instrument C. Helen Adams, praying that Frank O. Squire, Fred F. Squire and John P. Wyman, executors of the will of said John P. Squire, may be ordered to retain in their hands sufficient property to satisfy the claim of the petitioner, as set forth in a 'Statement of Claim' annexed to said petition.

"Due notice having been given to each and all of said executors and appearance having been made, and assent thereto having been filed, now on this eighteenth day of December, 1900, it appearing to the Court that a claim against the estate of said John P. Squire may become justly due to said John Herbert, as he is Trustee as aforesaid, said claim not exceeding forty-five thousand dollars, the respondents are hereby ordered to retain in their hands sufficient to satisfy said claim.

"Geo. F. Lawton,

"Judge of Probate Court."

*M. Storey,* (*J. Herbert* with him,) for the plaintiffs.

*G. L. Mayberry,* (*F. L. Washburn* with him,) for the defendants.

HAMMOND, J.   This is an action at law upon a bond given by John P. Squire, the defendants' testator, who had been appointed trustee of a certain fund in which the plaintiffs, the obligees, were interested as beneficiaries.   It was brought originally by John Herbert, who was appointed by the Probate Court as the successor of Squire as trustee, but the writ has been amended by substituting for Herbert the present plaintiffs.

The material condition of the bond is that "in the event of his ceasing to hold said sum of forty thousand dollars as trustee, by reason of death or otherwise, said John P. Squire or his heirs, executors or administrators shall pay said sum, together with any and all income therefrom which may and shall then be due, to such person as may and shall be designated by said C. Helen Downer, Roswell C. Downer, Frank W. Downer and Samuel T. Downer, or their legal representatives ; or in case of no agreement between said persons, to the one who may and shall be designated by the Judge of the Probate Court in and for the County of Middlesex aforesaid ; or to some person who may and shall be otherwise legally designated to receive said sum."

The breach relied on is the refusal of the defendants to pay said sum with interest to Herbert, Squire's successor in the trust. The chief defence is the statute of limitations.

1.  As to the special statute of limitations applicable to actions against executors.   It is plain upon the facts reported that no trust fund, as such, came into the hands of the defendants, and the plaintiffs do not seek to follow a specific trust fund.   As to these defendants, therefore, the bond is a merely personal obligation of their testator to be enforced like any other debt or obligation.   *Harlow* v. *Dehon,* 111 Mass. 195.   Since the plaintiffs stand upon the footing of general creditors, they are bound by the two years' limitation unless something is shown to bring the case within some one of the exceptions to it.

John P. Squire the trustee died January 7, 1893.   The defendants were appointed executors of his will February 7, 1893, on which day they filed their bond and gave due notice of their appointment.   Herbert was appointed trustee to succeed Squire January 10, 1900.   He made demand upon the defendants April 26, 1900, and on December 20, 1900, brought this action.   The demand therefore was made and the action

brought more than seven years after the appointment of the defendants as executors. It is contended by the plaintiffs that there was no default until the demand was 'made. It is urged by the defendants that while in a technical sense that may be true, still, inasmuch as it was in the power of the plaintiffs by consent or by application to the judge of the Probate Court to cause to be appointed or designated at any time after the death of the defendants' testator a person who could have made the demand upon the defendants within two years from their appointment, it was the duty of the plaintiffs to do so, and that having failed in that duty they cannot now say that their claim could not have been prosecuted within the two years. But we are not much impressed by this argument. It is plain that the breach did not occur until the demand and that the claim is therefore within the plain reading of the statute. The case of *Hall* v. *Bumstead*, 20 Pick. 2, upon which the defendants rely, was against the heirs of the deceased, and the language fixing the liability of heirs differs very much from that fixing the liability of executors; and we cannot read into this latter statute the words of the former upon which the decision in *Hall* v. *Bumstead* was made.

We are also of opinion that the petition to the Probate Court was presented before the estate was finally settled by the defendants. While Wyman, one of the executors and trustees, testified that in 1898 the personal assets of the estate were turned over from the account of the defendants as executors to their account as trustees, and that their account as executors was closed on the books, still he further testified that what he meant by this was that " the executorship was closed as far as the accumulation of any income was concerned, and that the administration of the estate as a trust estate began from and after said date." The defendants were executors and trustees. They filed no account as executors until May 13, 1902, more than a year after this action was begun, and in this account charged themselves with a balance amounting to more than enough to meet this claim, and no account of the executors has been settled. Under these facts it must be held that the petition for the retention of assets was seasonably presented. *Hall* v. *Cushing*, 9 Pick. 395. *Crocker* v. *Dillon*, 133 Mass. 91, 98. It is urged by the

defendants that the statute requires the application to be made by the party who can bring an action on the claim, and that the claim must be the same one upon which the action is afterwards brought. There can be no doubt that the claim must be substantially the same. It is perfectly plain, however, from the petition and the full statement accompanying it, that the petitioner, who as the successor of Squire was legally entitled to the trust fund, was seeking to have reserved in the hands of the executors the amount due from Squire's estate upon this bond as trustee. It is also plain that this action is brought on that bond for the purpose of recovering that sum; and that whatever the plaintiffs may recover is in liquidation of that debt and must go to the hands of Herbert, the petitioner, as trustee. We cannot agree with the contention of the defendants that the agreement made between the plaintiffs and Squire, under which he was authorized to lend the money to the firm of which he was a member, wholly annulled the trusteeship as between the parties. It is true that by the agreement between the *cestuis que trust* and Squire, as shown in the bond and contemporaneous paper, his liability as trustee was considerably different from what it would have been had no such agreement been made. In the absence of such an agreement he would have had no right to lend the money to the firm of which he was a member, he would have been accountable to C. Helen Downer, the life beneficiary, only for the net income, would have been entitled to a reasonable compensation, would not have been responsible for loss unless caused by his failure to perform his duty, and would have been answerable only for the fund remaining in his hands. Under the agreement the *cestuis que trust* were estopped to contend that the loan to the firm was a breach of the trust; the beneficiary for life was entitled to receive five per cent per annum as the income of the fund whether that per cent was earned or not; the trustee was entitled to no compensation; and, if there was any loss through fault on his part or from any other cause, he was to be responsible for it, and was absolutely bound to pay the sums named in the condition of the bond. In these and perhaps other respects the liability of Squire varied from that of an ordinary trustee. And yet the trust was not entirely annulled. The money was received by him as trustee duly appointed, and was to be paid

by him upon "his ceasing to hold said sum . . . as trustee, by reason of death or otherwise" to his successor in the trust. All this clearly appears from the bond and the contemporaneous paper. It was not the intention of the parties, nor was it the legal effect of the agreement, that Squire should cease to act as trustee. He was still a trustee and liable as such, except so far as the ordinary liability was changed by the agreement.

Although there is no specific trust fund with earmarks in the hands of the defendants, and therefore they cannot be held upon the ground that they are in possession of a particular trust fund in no way belonging to them as executors which they ought to pay over to their testator's successor in the trust, but, as before stated, are answerable on this bond to the plaintiffs in the same way only as to any general creditor under a sealed instrument, yet nevertheless as between the parties to the bond the trusteeship lasted until the death of Squire, except as modified by the agreement, and the amount recovered in this suit will be held under the terms of the trust as originally created. The sum due from the estate of the testator as trustee was the "claim" to satisfy which the defendants were ordered to retain in their hands sufficient funds, and the sum thus due is the sum to be recovered in this action. The petitioner as trustee is the person who was entitled to receive that sum in that capacity, and the person entitled to the proceeds of this suit. The merely technical rule that the action must be brought in the name of the plaintiffs cannot be regarded as fatal. In substance and effect, within the legal meaning of the statute, the party who made the application is the same who brings this suit, and the claim set forth in the petition, upon which is based the decree of the Probate Court, is that upon which the action is brought. See *Hammond* v. *Granger*, 128 Mass. 272. The special statute of limitations therefore is no bar to this action.

2. As to the general statute of limitations. No demand under the contract was made until more than seven years after it could have been made, and after the appointment of the defendants as executors. The defendants contend that this demand was not seasonably made; that it should have been made within a reasonable time, which, by analogy with the general statute of

limitations, they say would not exceed six years; and that inasmuch as it was not made within that time there is no liability on the bond. Here, as elsewhere in the consideration of this case, it must be borne in mind that this is not an action seeking to recover the money received by the testator upon the ground of an implied contract to repay it; and we are not considering whether such an action would be barred by the statute. This is an action upon a bond, and a cause of action arising under it is not barred until the expiration of twenty years at least from the time when in law it arose.

In some respects the decisions upon this branch of the law are conflicting, some courts holding that the statute does not begin to run until after a demand, no matter how long delayed, (*Thorpe* v. *Coombe*, 8 Dowl. & Ry. 347; *Rhind* v. *Hyndman*, 54 Md. 527,) some that it begins to run at once whether a demand be made or not, (*Palmer* v. *Palmer*, 36 Mich. 487; *Ware* v. *Hewey*, 57 Maine, 391,) and some holding that it does not begin to run until after a reasonable time for making the demand has expired. *High* v. *County Commissioners*, 92 Ind. 580. The subject has been discussed, many of the authorities being cited in support of each view, in *Shaw* v. *Silloway*, 145 Mass. 503, and *Campbell* v. *Whoriskey*, 170 Mass. 63. In the latter case the conclusion is reached that the true principle is that the demand should be made within a reasonable time, and that " where there is nothing to indicate an expectation that a demand is to be made quickly, or that there is to be delay in making it, . . . the time limited for bringing such an action after the cause of action accrues should ordinarily be treated as the time within which a demand must be made." If this language is to be literally taken, then, inasmuch as the cause of action on the bond would not be barred until the expiration of twenty years, the demand might be made at any time within twenty years, and the life of the bond might reach forty years. But this language was used in a case where the limitation of six years applied to the cause of action, and was not intended to be applicable to an action upon an instrument where the time within which an action may be brought is more than six years.

The rule that the demand should be made within a reasonable time is founded upon the presumed intention of the parties that

the liability shall not be indefinitely extended, and is established simply for the purpose of carrying out that intent. It is not intended to affect the nature of the contract in any other way. No case has been shown us, nor do we know of any, in which it has been applied so as to shorten the time within which the action could have been brought if the demand had been made at once. The statute of limitations applicable to a cause of action under this bond, even if existing simultaneously with the execution of the bond, is twenty years; and the principle invoked by the defendants should not be applied to reduce the time to a shorter period. Even if the demand was not made within six years, it was made early enough for this action to be brought well within twenty years from the execution of the bond; and that is sufficient. The time for the continuation of the liability is not extended beyond the time contemplated by the parties, and a rule established solely to prevent an illimitable extension of time should not be applied to reduce the time to a shorter period than that originally contemplated by the parties. This case does not require us to go further. We make no intimation as to what the rule should be if an action be brought after the expiration of the twenty years from the execution of the bond upon a demand made more than six years after such execution. The present action being supported by a previous demand, and being brought within twenty years from the execution of the bond, is not barred by the general statute of limitations. See *Keithler* v. *Foster*, 22 Ohio St. 27.

It follows that the action is not barred by any special or general statute of limitations.

The defendants further contend that if their testator is to be regarded as trustee, and this bond as an obligation conditioned for the faithful performance of his trust, no action at law can be brought until the accounts of the trustee are fully settled. But it is to be noted that this is not a general bond given for the faithful discharge of his trust. It is rather a special bond given in consideration of the permission to do an act for which he otherwise would be held answerable as for a breach of trust. It is conditioned for the payment of a certain sum therein particularly specified. To such a bond the rule, for obvious reasons, is not applicable.

There must be judgment for the plaintiffs for the penal sum named in the bond, and execution is to issue for the sum which shall be found due by the court.

*So ordered.*